(Reap. Dec. 10982)

STANLEY HOME PRODUCTS, INC. *v.* UNITED STATES

Entry No. 821127, etc.

(Decided May 17, 1965)

*James G. McGoldrick* (*Jerome M. Lynes* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

RAO, Judge: Plaintiff herein seeks a reappraisement of various shipments of merchandise invoiced as saladmakers, which were imported through the port of New York during the period between November 22, 1957, and April 2, 1958. Thirteen appeals for reappraisement are here involved and have been consolidated for purposes of trial.

The items in dispute, as demonstrated in the record, are used for the purpose of shredding, grating, and slicing vegetables, nuts, cheese, and the like. Each consists of a stationary framework in which removable drums or cutting cylinders may be inserted. As imported, each item was equipped with four drums, a handle for revolving them, and a metal bracket for pressing against the substance being subjected to the action of the drum.

The articles in issue were appraised at a value of $1.59 each, net, packed, which the record shows represented statutory export value, as defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, for those shipments entered prior to February 27, 1958, or as defined in section 402(b) of said act, as so amended, for those shipments entered subsequent to said date.

Insofar as the entries prior to February 27, 1958, are concerned, there appears to be some doubt as to the statutory basis of value upon which plaintiff relies in challenging the appraised value of the merchandise at bar. In an amended statement, filed December 14, 1962, pursuant to rule 15(d) of the rules of this court, plaintiff advised that it was claiming foreign value, or, in the alternative, cost of production, as those bases of value are set forth in section 402a (c) and (f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. However, in the brief filed in behalf of plaintiff subsequent to the trial, it is contended as to these entries that export value, as "defined in section 402(c), Tariff Act of 1930, as amended [prior to amendment by Customs Simplification Act of 1956] is the proper basis of value," or alternatively, that statutory cost of production is the proper basis of value for purposes of appraisement.

With respect to those cases involving entries made subsequent to February 27, 1958, plaintiff contends for export value, or, alternatively, United States value, as those bases are defined in subsections (b) and (c), respectively, of section 402, as amended by said Customs Simplification Act.

The relevant portions of said section 402, as amended, are set forth below.

Section 402a (c), (d), and (f), as amended, *supra*—

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of

the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are are engaged in the production or manufacture of merchandise of the same class or kind.

Section 402 (b), (c), and (f), as amended, *supra*—

(b) Export Value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

(c) United States Value.—For the purposes of this section, the United States value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal market of the United States for domestic consumption,

packed ready for delivery, in the usual wholesale quantities and in the ordinary course of trade, with allowances made for—

(1) any commission usually paid or agreed to be paid, or the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement;

(2) the usual costs of transportation and insurance and other usual expenses incurred with respect to such or similar merchandise from the place of shipment to the place of delivery, not including any expense provided for in subdivision (1) ; and

(3) the ordinary customs duties and other Federal taxes currently payable on such or similar merchandise by reason of its importation, and any Federal excise taxes on, or measured by the value of, such or similar merchandise, for which vendors at wholesale in the United States are ordinarily liable.

If such or similar merchandise was not so sold or offered at the time of exportation of the merchandise undergoing appraisement, the United States value shall be determined, subject to the foregoing specifications of this subsection, from the price at which such or similar merchandise is so sold or offered at the earliest date after such time of exportation but before the expiration of ninety days after the importation of the merchandise undergoing appraisement.

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\*    \*    \*    \*    \*    \*    \*

Specifically, plaintiff contends for a foreign value of 6.3 DM per unit; an export value, or value based upon cost of production of $1.50 per item, or a United States value of $0.70 each.

The confusion created by the inconsistency in the statements of the bases of value which are claimed to be proper, seems hardly to have been dispelled by the record presented in behalf of plaintiff in the instant case. As will be developed, *infra*, plaintiff's dissatisfaction with the appraised value has not been supported by adequate proof to establish either that the appraised value was erroneous or that any alternative basis of value, as claimed, is correct.

The record consists of the following evidence on behalf of plaintiff: The testimony of plaintiff's national sales manager, Mr. Bruno F. Ged-

min; a sample of the imported merchandise, introduced into evidence as plaintiff's exhibit 1; a copy of plaintiff's purchase order for the merchandise at bar, marked plaintiff's exhibit 2; and an affidavit of plaintiff's European agent, Mr. Curt D. Rhonheimer, plaintiff's exhibit 5. On behalf of defendant, there was stipulated into the record the substance of the testimony of one Charles Torelli, a member of the import department of the firm of Thoresen, Inc., of 585 Water Street, New York; a purchase order from a firm designated as Harzell Industries Co., Inc., of New York, received in evidence as defendant's exhibit A; three invoices addressed to Thoresen, Inc., in evidence as defendant's collective exhibit B; a report of Arno Ziesnitz, acting senior customs representative of Frankfurt/M, Germany, together with accompanying exhibits, which was marked defendant's collective exhibit C; and the German manufacturer's catalog for the current year, i.e., presumably 1962, defendant's exhibit D.

It appears from the foregoing that plaintiff is a concern engaged primarily in the distribution of merchandise through direct sales. These sales are promoted through premiums and gifts to individuals who undertake to lend their homes for use in the display of plaintiff's products. In order to prevent price comparisons with regularly marketed merchandise, those articles distributed as gifts are customarily selected for their exclusiveness. Apparently, the saladmaker in issue was intended as such an item.

The record shows that plaintiff negotiated with the Bavarian firm of H. Schulte & Co. for the purchase of 75,000 saladmakers of a particular style and composition, with the assistance of said Curt D. Rhonheimer of Zurich, Switzerland, who appears to have been conducting business under the trade name of National Silver Co. The price agreed upon for an item designated as No. 512 was $1.50 each, f.o.b. Bremen.

One of the conditions of the sale, as stated by the affiant, Rhonheimer, was that the manufacturer agreed to grant plaintiff an exclusive distributorship of this item, provided that plaintiff would confine its use to premiums and prizes and not offer it for sale in the markets of the United States. As testified to by the witness Gedmin, "We had an exclusive interest on this item only as a basis of using it as a premium and not to be sold to stores or sold in this country as a retail product."

According to the evidence submitted by the plaintiff, the saladmakers turned out to be defective and virtually useless, since the drums would not firmly attach to the stands nor would they successfully cut or grind after a few usings. As a consequence, the order was canceled after approximately 65,000 pieces were received. Apparently, however, no attempt was made to return the defective merchandise.

All but a few of those units on hand were disposed of in one lot to Harzell Industries Co., Inc., at a price of $1 each, after attempts to sell

the shipments to Macy's, Gimbel's, and Sears proved unsuccessful. The purchaser did not abide by the agreement to pay $1 for each saladmaker, and eventually, as the result of litigation, paid plaintiff 50 cents per unit.

No evidence tending to support foreign value or cost of production was in fact elicited. The recital of the difficulties attendant upon the distress sale of this merchandise in the United States, coupled with the unsupported statement of the witness Gedmin that the landed cost of the subject saladmakers was $2.30 each, at Easthampton, Mass., including transportation, constituted plaintiff's purported proof of statutory United States value.

Apparently, the appraised value was predicated upon sales by the German manufacturer of a saladmaker model No. 836 to Thoresen, Inc., of New York City, at a price of $1.59 each, invoiced to the latter under dates of December 13, 1957, and April 2, 1958. Plaintiff sought to show not only that Nos. 512 and 836 were different types of saladmakers, but also that, since the No. 512 units which it imported were defective, they were not similar merchandise in contemplation of law. However, and notwithstanding allegations of counsel for plaintiff having some color of merit that the report of the customs representative was replete with hearsay, it does contain an excerpt from a letter written by the National Silver Co. to H. Schulte & Co. under date of January 8, 1958, which reads as follows:

> Please be sure that the article number of the saladmakers has to be on the documents and packing lists *No. 512* and your own identification No. 836 is to be dropped. [Italics quoted.]

Moreover, the substance of the testimony of the witness Torelli, stipulated by the parties, serves to show that the No. 836 saladmaker imported by Thoresen, Inc., was identical to the No. 512 saladmaker in evidence as plaintiff's exhibit 1; and that the purchase price thereof was $1.59 each, packing and inland freight included; "that such merchandise was offered to his firm by the manufacturer without restriction as to quantity, price, resale price, disposition, or other restriction; that his firm had no written agreement with the manufacturer as to the exclusive purchaser or restriction; that his firm had no mass return of the merchandise which his firm sold out of these shipments for defective reasons and that only a few were returned for varying reasons including defective operations; * * *."

But whether or not the appraised value has been supported by substantial evidence is not the initial question to be determined in a case of this kind. By statutory provision, the appraised value is clothed with a presumption of correctness, and the burden of proving otherwise is imposed upon the party who claims that it is erroneous. 28 U.S.C., section 2833. The measure of that burden is set forth in

the case of *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, in the following language:

To sustain his burden of proof, and overcome this statutory presumption, it is incumbent upon appellant, the party challenging the value found by the appraiser in the first instance, to prove the action of the appraiser was erroneous and to establish some other dutiable value as the proper one. To do this, that party must meet every material issue involved in the case, and if he fails to do so the value fixed by the appraiser remains in full force and effect. *United States* v. *Gane and Ingram, Inc.*, 24 C.C.P.A. (Customs) 1, T.D. 48264, citing *United States* v. *T. D. Downing Co.* (*George H. Sweetnam, Inc.*), 20 C.C.P.A. (Customs) 251, T.D. 46057.

It is not necessary for the Government to substantiate the appraised value until the importer has offered proof of its deficiency and the merit of some other value. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. And the presumption created by statute carries with it the proposition that the appraiser has found the existence of all facts necessary to support the value which he returned. *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75; *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715.

The court finds the instant record singularly lacking in proof to establish either that the appraised value is erroneous or that any of the claimed values is correct.

Insofar as export value under the provisions of section 402a(d) is concerned, it is at once apparent that the exclusive agency and the restrictions upon distribution, which plaintiff readily acknowledged conditioned the purchase of the merchandise at bar, are contrary to the concept inherent in the expression "freely offered for sale to all purchasers" in said provision.

The law is well settled that—

* * * Wherever a restraint is imposed upon the use of purchased goods there can be no free market, regardless of whether such restraint has been imposed by the sovereign or a private association, cartel, or syndicate. The very essence of freedom is taken from a sale of goods accompanied by any restraint with respect to its resale, use or other disposition, regardless of the source of such restraint.

*United States* v. *Graham & Zenger, Inc.*, 31 CCPA 131, C.A.D. 262.

While the Customs Simplification Act of 1956 broadened the scope of the language relating to a free market and specifically provided that the expression in section 402(b) thereof "freely sold or * * * offered for sale" may embrace sales to one or more selected purchasers, even when accompanied by certain restrictions, it retained as inimical to any concept of a free offer "restrictions as to the disposition or use of the merchandise by the purchaser * * *." (*Vide*, § 402(f)(1) (B).)

Consequently, the sale to the plaintiff of the merchandise at bar must be disregarded as a determinant in the consideration of the price at which such merchandise was offered for sale to all purchasers.

Under these circumstances, there is no evidence which can be considered as establishing any of the elements entering into any of the bases of value specified in section 402 of the Tariff Act of 1930, or as amended by the Customs Simplification Act of 1956, or as proving any different value from that returned by the appraiser. No sales for home consumption in the country of exportation have been shown. Hence, foreign value within section 402a(c) has not been proven or, for that matter, negatived.

Cost of production is not established by a mere statement of the price at which merchandise is purchased. Each of the statutory elements thereof must be separately shown. *Philipp Wirth et al.* v. *United States, United States* v. *Philipp Wirth et al.*, 23 CCPA 283, T.D. 48144.

Nor is United States value established by proof of one sale of an entire lot of merchandise, in the absence of evidence of principal market, usual wholesale quantities, ordinary course of trade, and the actual allowable deductions from the price in the principal markets of the United States. *United States* v. *International Graphite & Electrode Corp.*, 25 CCPA 74, T.D. 49066.

If, by reason of the defective condition of the instant merchandise, a value existed which, under any of the statutory definitions contained in section 402, was less than the appraised value, the record is barren of evidence to show it. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

By reason of the foregoing, the court makes the following findings of fact:

1. The merchandise involved in the instant consolidated appeals for reappraisement consists of so-called saladmakers, exported from Germany during the period between November 1957 and April 1958.

2. Said saladmakers were appraised at $1.59 each, net, packed, on the basis of export value, as defined in section 402a(d) or section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, depending upon the date of entry.

3. The sale to plaintiff of the saladmakers at bar was accompanied by a restriction against the resale thereof in the markets of the United States, and a limitation that they be disposed of as prizes or premiums.

4. The record is barren of any evidence to establish any statutory basis of value, or any other value than that returned by the appraiser.

The court concludes, therefore—

1. That there is no evidence to overcome the presumptively correct values returned by the appraiser.

2. That export value, as defined in section 402a(d) or section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper statutory basis for the determination of the value of the merchandise covered by these appeals for reappraisement and that such value is $1.59 each, net, packed.

Judgment will be entered accordingly.